UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-14050-CIV-MARTINEZ/LYNCH

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

WE THE PEOPLE, INC., OF THE UNITED STATES,

    Defendant.
_____/

## REPORT AND RECOMMENDATION ON RECEIVER'S FIRST INTERIM APPLICATION FOR AN ORDER APPROVING AND AUTHORIZING PAYMENT OF FEES AND EXPENSES OF RECEIVER AND HER PROFESSIONALS (DE 22)

    **THIS CAUSE** comes before this Court upon an Order of Reference and the above Motion. Having reviewed the Motion, noting that the SEC does not object to the requested relief and that otherwise no party has responded within the given time for doing so[1], this Court recommends as follows:

    1.    By way of Consent Judgment (DE 7), the Defendant was placed into receivership, and by way of separate Order (DE 6), Melanie E. Damian, Esq., was appointed as Receiver. By way of subsequent Orders, additional parties were then appointed to assist the Receiver. As such, the law firm of Damian & Valori, LLP (where the Receiver also practices) was appointed as Lead

---

[1] At DE 29, the Receiver clarifies that the Defendant was placed in full receivership, and thus the Defendant no longer exists as its own, separate entity. This Court adds that despite its receivership status, this Court will refer to the Defendant separately where the distinction helps to make the discussion clearer.

Counsel. (Of note, the record contains at DE 25 an objection by an interested third party to one facet of this appointment, namely, the contingency fee arrangement for the pursuit of "claw-back" claims.) Additional appointments were the law firm of Ver Ploeg & Lumpkin, P.A., as special insurance counsel; the law firm of Petitt Worrell Craine Wolfe, LLC, as special transactional counsel; and the accounting firm of Global Risk Solutions, Inc., as the forensic accountant and accounting consultant. As for the services that each assisting professional rendered, this Court relies on descriptions found in both the instant Motion and the earlier filed Receivership Plan.

2.   The Order appointing the Receiver permits her and her "Retained Personnel" (defined as those persons and entities that she solicits to assist her in carrying out her receivership duties) to recover their "reasonable compensation and expense reimbursement from the Receivership Estates", subject to court approval. The Receiver now seeks such fees and expenses for the time period February 8, 2013 to May 3, 2013.

3.   The Order Appointing Receiver states that "[t]he Receiver's fees shall not exceed $90,000, without further order of the Court." In her Motion, the Receiver states that this cap applies for the initial 90 day period of the receivership. The Receiver further states that the total fee and expense request of her and her Lead Counsel of $53,190.90 meets this budget

limit. However she and her professionals, when considered all together, are claiming a total of $94,645.38 in fees and costs. The Receiver does not explain whether this cap limits the full requested amount although it seems that it would. In any event the point is moot because this Court is recommending a total fee and cost amount that falls below the cap.

4. Outside of these judicially approved appointments, the Receiver hired a Chief Restructuring Officer to manage the Defendant's daily operations. It does not appear that the Receiver seeks to recover for fees or costs of the Chief Restructuring Officer directly although the Receiver's Lead Counsel does bill for time spent working with that person.

## DISCUSSION

5. As noted above, the Order Appointing Receiver entitles the Receiver to "reasonable compensation and expense reimbursement". Apart from reference to the SEC's Billing Instructions, the Receiver does not state what the standard for judging the reasonableness of the requested fees and expenses is. This Court finds that the federal "lodestar" standard of reasonableness should apply.

6. The "lodestar" fee is the product of the reasonable number of hours expended on the case and the reasonable hourly rate. The Eleventh Circuit set forth the framework for this analysis in the case of Norman v. Hous. Auth. of Montgomery, 836

F.2d 1292 (11th Cir. 1988), and it presumptively incorporates the twelve factors set out in Johnson v. Ga. Highway Express, 488 F.2d 714 (5th Cir. 1974), see Ass'n of Disabled Am. v. Neptune Designs, Inc., 469 F.3d 1357, 1359, n.1 (11th Cir. 2006). The lodestar standard, in turn, obliges the requesting party to document, such as through time sheets or other descriptive billing details, and to substantiate the reasonableness of the claimed amount. See ACLU v. Barnes, 168 F.3d 423, 428 (11th Cir. 1999) (stressing the need for supporting documentation in order to enable the court to review for reasonableness). See also, Friedman v. So. Fla. Psychiatric Assocs., 139 Fed.Appx. 183 (11th Cir. 2005). The same obligation to document and substantiate applies to the requesting party's cost request. See Johnson v. Mortham, 173 F.R.D. 313 (N.D.Fla. 1997) (Hatchett, Chief Circuit J.). Lastly Local Rule 7.3 requires adequate documentation of both fee and cost requests.

7. An additional standard is that of good billing judgment. Good billing judgment means the exclusion of excessive, redundant, or otherwise unnecessary hours and the submission to the paying party the same bill that the movant would expect to pay. See Perkins v. Mobile Hous. Bd., 847 F.2d 735, 738 (11th Cir. 1988). Where counsel does not practice good billing judgment, "courts are obliged to do it for them". See Barnes, 168 F.3d at 428.

8. This Court emphasizes yet another point of consideration. Generally speaking, the purpose of the receivership is to protect third parties and to safeguard the Defendant's assets. (At DE 30 the Receiver states that the Defendant's main asset are charitable gift annuities.) This Court reviews the current pending Motion (and will do so for any future fee and cost motions that may be referred) meticulously, with this point in mind, to ensure that only reasonable compensation is paid and that the Defendant's assets, which are to be protected and conserved, are not unnecessarily depleted.

9. This Court begins its review with the fees requested by the Receiver's Lead Counsel. For the relevant time period, they submit a bill for 310.40 hours of attorney work (not counting paralegal work) on the case. This Court finds nothing patently unreasonable in the work done on the case to-date. Much of the work consists of tasks related to securing the Defendant, taking over its operations, taking inventory of all assets and liabilities, and making necessary arrangements. In other words, the billing is consistent with the extra effort one would expect when first taking over an operation and bringing it to a liquidation-ready state. For this work, the Receiver and her Lead Counsel seek $51,414.00. This is the product of hourly rates of $265—200 for attorneys, $100 for paralegals, and $145—150 for unspecified "non-lawyer professionals". It also is the

amount left after a $23,000 discount. This Court finds both the claimed fee amount (and the $1,776.90 in claimed costs and expenses) reasonable and compensable. As for the "claw-back" claims, it appears that Lead Counsel is now billing for work done investigating them, although it will seek contingency fee-based compensation for the task of actually pursuing them.

10. Next this Court reviews the bill submitted by the forensic accountant, Global Risk Solutions, Inc. (Although multiple persons worked on behalf of Global Risk Solutions, Inc., this Court will refer to the forensic accountant in the singular for ease of reference.) The Receiver states, and the accountant's report corroborates, that the accountant examined the Defendant's financial records, verified the accuracy of its bookkeeping, and analyzed the financial records for possible claims against third parties. It does not appear that the Receiver had to locate hidden assets or recover dissipated assets. To the contrary, the Defendant already had accounting and bookkeeping records (as well as its own CPA and other accounting software), and thus much of the forensic accountant's work was limited to verifying the accuracy of those records and otherwise categorizing expenditures for receivership purposes. This Court further notes that others assisted with accounting-related tasks, as well. A former employee of the Defendant, the CRO, and the Receiver, herself, performed accounting tasks.

11. The forensic accountant is charging a rate of $185 an hour for partner-level work and a rate of $150 an hour for less than partner-level work. The accountant claims 19.75 hours expended by a partner-level accountant and 115 hours expended by an associate-level accountant. Thus the forensic account claims a total of $20,903.75 in fees. This Court is aware that the forensic accountant is not a lawyer and did not render legal services, but it remains obliged to demonstrate the reasonableness of its claimed fees and costs.

12. As the record stands, however, this Court is unable to confirm the reasonableness of the full claimed amount. First, the task descriptions found in the accountant's time sheets are very general, and second, the records suggest that the accounting services needed for receivership purposes were relatively non-complex. In the absence of a persuasive demonstration of reasonableness and in the exercise of this Court's own discretion, see Butler v. Crosby, 2005 WL 3970740, *7-8 (M.D.Fla. 2005) (citing seminal case law), this Court finds the claimed fee amount to be excessive. This Court finds $15,677.81, after a 25% reduction, to be reasonable compensation.

13. As for its claimed $2,936.03 in costs, the forensic accountant documents it with receipts. These are receipts for travel (gas, rental car, plane tickets, etc.), hotel, and food-

related expenses. Although the forensic accountant does document these expenses, the problem here is its failure to demonstrate how they were necessarily incurred and are justifiable. Of note, the Receiver's Lead Counsel does not bill for travel-related time or expenses, nor does the Receiver state the need to solicit an accountant who was outside of the Defendant's area (Tallahassee, Florida). Since the great majority of the claimed costs are travel and per diem related, and because there is no persuasive showing of the reasonableness or even necessity of these costs and expenses, this Court finds that the request should be denied in its entirety.

14. This Court turns next to the special insurance counsel. Its primary effort during the relevant time period was the filing of a claim against the Defendant's Directors and Officers liability insurance policy. Specifically, the Receiver states that she "and her Lead Counsel, with the assistance of the Insurance Counsel, made a claim on the policy and arranged for an extension of the reporting period under the D&O Policy. The Insurance Counsel has analyzed the D&O Policy and will work with the Receiver on pursuing covered claims." This Court reads this to mean that the insurance counsel has done the work needed to bring the D&O claim but has not yet collected on that claim. The Lead Counsel's own billing records tend to confirm that insurance counsel mainly worked on the D&O policy issue, with

Lead Counsel working on other insurance matters such as the insurance needed for the Defendant's day-to-day business operations and employee benefits.

15. For this work, the insurance counsel claims 37.80 hours of work time at rates ranging from $525 to $225 an hour, for a total of $10,017 in attorney fees. The insurance counsel does provide time sheets for the work done. However those time sheets are heavily redacted and what tasks are disclosed are mostly clerical in nature. In the absence of a persuasive demonstration of reasonableness and in the exercise of this Court's own discretion, see Butler, supra, this Court finds the claimed fee amount to be excessive. This Court finds $7,512.75, after a 25% reduction, to be reasonable compensation. This Court finds the claimed $17.70 in copying costs reasonable. Therefore this Court finds the insurance counsel entitled to total compensation in the amount of $7,530.45.

16. Lastly this Court addresses the transactional counsel. The Receiver explains that she hired transactional counsel to help with the transfer of a women's shelter out of the Defendant's hands and to a suitable charity to take it over, along with all the related tasks needed to make a complete transfer. Transactional counsel's time sheets show that one lawyer, identified by the initials, "RMB", billed for 27.80 hours of work at a $265 hourly rate, for a total of $7,367. This

Court finds the requested amount (as well as the claimed $213 expense amount) reasonable. This Court highlights how the transactional counsel's fee claim differs from that of the insurance counsel and the forensic accountant discussed above. With respect to the transactional counsel, the Motion indicates clearly what work they did and how it was necessary and beneficial; the time sheets clearly document and verify this; and upon independent review, the claimed fee amount appears to be a reasonable charge for the work done. Consequently this Court finds reasonable the total claim of $7,580.

17. This means, taking all of the above findings together, that the Motion should be granted in the total amount of $83,979.16. This Court finds that when viewed on the whole, this overall fee and cost/expense total is reasonable compensation for the combined receivership work done during the relevant time period. This Court notes that the Receiver is not seeking full compensation but rather compensation for just the first three months of work.

18. This Court notes that there is a holdback provision. As the Receiver explains in her Motion, the awarded fees and costs are not to be paid in full at this time. Rather, 20% of the awarded compensation is to be held back, subject to the District Court's final review and approval upon the Receiver's discharge. This Court will account for this 20% holdback below.

## CONCLUSION

19. The Order Appointing Receiver entitles the Receiver and her Retained Personal to "reasonable compensation and expense reimbursement". Moreover it is the Receivership Estate, that is, the assets of the Defendant, assets that the Receiver holds for the protection of third parties, that pays the fee and cost award. Careful review of the Receiver's claim for fees and costs therefore is necessary to ensure their reasonableness. Having conducted such a careful review of the Motion, this Court finds that it should be granted but only in part.

**ACCORDINGLY**, this Court recommends to the District Court that the Receiver's First Interim Application (DE 22) for fees and costs be **GRANTED, in part**, as follows.

   I. The fee and cost/expense amounts that this Court finds reasonable for each party are:

   A. $53,190.90 for the Receiver and her Lead Counsel, Damian & Valori, LLP,

   B. $7,530.45 for the Insurance Counsel, Ver Ploeg & Lumpkin, P.A.,

   C. $7,580 for the Transactional Counsel, Petitt Worrell Craine Wolfe, LLC, and

   D. $15,677.81 for the forensic accountant, Global Risk Solutions, Inc.

   II. The above reasonable fee and cost/expense amounts yield an overall total award figure of $83,979.16.

III. The amount of fees and cost/expenses to be awarded now (and the amount to be held back pending final ruling) are:

   A. $42,552.72 to be distributed now (with $10,638.18 to be held back) to the Receiver and her Lead Counsel,

   B. $6,024.36 to be distributed now (with $1,506.09 to be held back) to the Insurance Counsel, Ver Ploeg & Lumpkin, P.A.,

   C. $6,064.00 to be distributed now (with $1,516.00 to be held back) to the Transactional Counsel, Petitt Worrell Craine Wolfe, LLC, and

   D. $12,542.25 to be distributed now (with $3,135.56 to be held back) to the forensic accountant, Global Risk Solutions, Inc.

IV. As such, this Court recommends that a total of $67,183.33 be awarded now on the Motion with a total of $16,795.83 to be held back pending final ruling.

The parties shall have fourteen (14) days from the date of this Report and Recommendation within which to file objections, if any, with the Honorable Jose E. Martinez, the United States District Judge assigned to this case.

**DONE AND SUBMITTED** in Chambers at Fort Pierce, Florida, this 18th day of June, 2013.

FRANK J. LYNCH, JR.
UNITED STATES MAGISTRATE JUDGE

cc: Hon. Jose E. Martinez
    Kenneth Dante Murena, Esq.
    Dugan Bliss, Esq.