UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-14050-CIV-MARTINEZ/LYNCH

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

WE THE PEOPLE, INC., OF THE UNITED STATES,

    Defendant.
_____/



FILED by ___ D.C.
NOV 26 2013
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - FT. PIERCE

### REPORT AND RECOMMENDATION ON RECEIVER'S THIRD INTERIM QUARTERLY APPLICATION FOR AN ORDER APPROVING AND AUTHORIZING PAYMENT OF FEES AND EXPENSES OF RECEIVER AND HER PROFESSIONALS (DE 78)

THIS CAUSE comes before this Court upon an Order of Reference (DE 82) and the above Motion. Having reviewed the Motion, noting that no responsive pleadings were filed and noting further that the SEC does not oppose the Motion, this Court recommends as follows:

    1.  By way of the instant Motion, the Receiver seeks to recover fees and expenses for services rendered for the three month time period of July to September, 2013. For herself and her Lead Counsel, she seeks $51,536.50 in fees and $833.04 in expenses. For the receivership's special insurance counsel, she seeks $5,422.50 in fees and $.90 in expenses. This Court observes that for receivership work done from February to July, 2013, the Receiver already has been awarded a total of $77,031.67 in fees and expenses. Special insurance counsel

already has been awarded a total of $9,677.95 in fees and expenses.

2. This Court reviews these requests for reasonableness and good billing judgment according to the federal lodestar fee standard. (This Court discusses that standard in its Report and Recommendation on the Receiver's first fee motion.) This Court also reviews these requests with the need to conserve the receivership's assets for the benefit of third parties. The need to demonstrate the reasonableness of the requested fee award and the need to exercise good billing judgment apply with particular force to this third fee motion, and this ruling looks back to the prior two Report and Recommendations.

3. This Court begins with the Receiver's claim for fees. As the Receiver explains in her Motion and in her Third Quarterly Status Report (DE 76), the Receiver continues to handle a variety of matters related to the receivership's administration, the handling of its annuity assets, and litigation. For this work, the Receiver's attorneys charge an hourly rate ranging from $265 to $200, for an average rate of $238.75. (The Receiver calculates a blended rate of $229.58 an hour.) This Court already has accepted these hourly rates as reasonable. For this work, the Receiver's attorneys claim a total of 225.03 hours expended, the equivalent of over 5½ full-time workweeks during the three month fee period.

4. This is in addition to the work done by others who the Receiver hired to administer the receivership and who the receivership pays directly. The Receiver hired Roy Emmons as the Chief Restructuring Officer to manage day-to-day business operations and who helps carry out legal-related tasks. It is unknown whether the $46,000 consulting fee that the receivership paid during the July to September period is for Mr. Emmons. The Receiver also has an accountant whom it paid $8,450.00 during the same three month period. This Court has made this same observation before, but the Receiver still does not relate these ancillary professional fees to her attorney fee request. Neither of these ancillary professional fees are subject of a reasonableness review, and the Receiver does not demonstrate how they result in overall less cost burden to the receivership. Moreover, while the Receiver points out how she has reduced We the People, Inc.'s operating expenses since taking it over, it is unclear whether she includes these ancillary professional fees in the before and after cost comparison.

5. The Receiver's presently claimed fee amount is close to the amount claimed in the first fee motion. That motion sought compensation during the receivership's creation, a time which this Court described in its first Report and Recommendation (DE 34) as requiring "the extra effort one would expect when first taking over an operation and bringing it to a

liquidation-ready state" involving such tasks as "securing the Defendant, taking over its operations, taking inventory of all assets and liabilities, and making necessary arrangements." Such is no longer the situation. Thus, given that the presently claimed fee amount remains similarly large, this Court will review the instant fee claim in more detail, on a task-by-task basis.

6. With regard to the task-by-task billing entries, this Court will discuss them here in far greater detail than the Receiver does in her Motion. This Court notes that its own calculations of how much time the Receiver's attorneys spent on each general task category may not be absolutely precise. Not all of the billing entries are clear as what the task category is. The Receiver has left it largely to this Court to make sense of the submitted billing records and how the entries relate to receivership activities. This Court adds that it does not include paralegal hours in its calculations, even when paralegal hours are billed, with one exception noted below. This Court excludes them for instant purposes in order to focus the discussion on attorney work hours.

7. The general task category on which the Receiver's attorneys spent most of their time was the receivership's claim against the Defendant's D&O insurance policy. This Court will

address this matter separately, in conjunction with the fee claim by the Receiver's special insurance counsel.

8. The next general task category in terms of number of work hours expended is the management of the annuities. For this, the Receiver claims 38.7 hours. Much of this time was spent in correspondence with Mr. Emmons, the Chief Restructuring Officer. This time does not include the 6.5 hours spent corresponding with the Allianz insurance company and corresponding with the insurance regulator for the State of Kentucky. Nor does it include the 22.9 hours spent corresponding with the IRS in securing a Closing Agreement. Such an agreement was needed in order to avoid adverse tax consequences from the transfer of the annuities to a legitimate charity.

9. The Receiver claims 11.8 hours spent on business operation tasks, much of which concerned the review and execution of insurance papers. The Receiver claims 4.7 hours on real estate-related tasks, much of which concerned correspondence with realtors. The Receiver spent 3.6 hours working on claims against third parties such as recovering commissions paid.

10. This Court next addresses litigation-related tasks. The Receiver spent .8 hours related to the Walls' objection. The Receiver spent 7.5 hours on a lawsuit brought by the Defendant's landlord; her participation in that lawsuit consisted mostly of

advising that presiding court of the receivership stay. A task billed in prior fee claims, the Receiver continued to pursue the production of documents from the law firm of Akerman & Senterfitt. In this effort, in obtaining the documents, the Receiver claims 4.7 hours. As for specific tasks directly related to this litigation, this Court notes that the Receiver claims 5.4 hours on status conferences and related activities, and 11.3 hours preparing the Receiver's second quarterly report. The Receiver also claims 1.3 hours spent on a previous fee motion (but otherwise she does not seek reimbursement for working on that motion).

11.   This Court categorizes the billing in this way in order to show why the claimed fees are unreasonably high. The billing entries suggest that the Chief Restructuring Officer did much of the work. This makes the hours billed for correspondence and conference time with him seem excessive. The eleven hours spent writing the Receiver's Second Report is high given that it does not even include conference time discussing the receivership's status. The nearly 23 hours spent corresponding with the IRS is high even in light of the importance of the tax matter. The nearly five hours spent on an ongoing effort to secure a document production from a law firm is high. They are unreasonably high when judged against the principle of good billing judgment.

12. However it is with respect to the D&O insurance claim that the claimed fee is most unreasonable. To begin with, this Court observes that the Receiver has been billing for work done on the D&O insurance claim since the first fee motion. In its first fee motion, the special insurance counsel of Ver Ploeg & Lumpkin, PA, sought fees for work done on filing the claim against the D&O insurance company, Darwin National Insurance Co. In the second fee motion, the special insurance counsel again sought reimbursement for work done on the D&O insurance claim. Now the Receiver, herself, seeks reimbursement for work on the D&O insurance claim and substantial hours at that.

13. Billing records suggest that by the third quarter, the work on the D&O claim switched to litigation-related efforts. A month and a half into the instant billing period, the Receiver had spent 45.2 hours working on the claim of which 12.3 hours were spent just drafting the complaint. Over the next month and a half, the Receiver spent another 42.1 hours, much of which still was spent on drafting the compliant, but now included work further developing the D&O claim as well as developing a breach of fiduciary duty claim against the Defendant's directors. This includes two hours spent by a paralegal on the cover sheet and summons paperwork accompanying the breach of fiduciary duty complaint. The Receiver spent another 8.9 hours on developing a fraud claim against the Olives as well as on asset

investigation. The time billed for drafting complaints alone is unreasonably high, and this Court extrapolates therefrom that the Receiver overbills for the other tasks, as well.

14. To this, the special insurance counsel bills $5,422.50 for work it did. Curiously that it is the amount that the special insurance counsel incurred for work done only in the month of July. The amount claimed in the Motion does not seem to include the $10,890 that the special insurance counsel bills for the months of August and September, even though those two additional billing invoices are attached to the Motion at Exhibit C. The reason why the Receiver seeks to collect only for the month of July is unstated. Were the Receiver to seek a reimbursement of the full $16,312.50, this Court would have found that amount unreasonably high. That fee is the product of two hourly rates ($225 and $525) and nearly 60 hours of work by the special insurance counsel. This, of course, is in addition to the time spent by the Receiver's attorneys on the same task.

15. This Court understands that a successful D&O claim will benefit the receivership because it will provide funds to replenish the receivership's assets. Conservative management of the receivership for the benefit of third parties is, after all, the Receiver's ultimate goal. Good billing judgment is important to the receivership, too, and this Court must take that into account, as well. This Court finds the amount that the Receiver

actually claims on behalf of the special insurance counsel---just a third of the total potential fee claim---to be reasonable accommodation of these two considerations and to obviate the need for any further inquiry. Thus, this Court recommends that the special insurance counsel be awarded $5,422.50 in total fees.

16. The same two points of consideration apply to the fee amount that the Receiver claims for her attorneys. On one hand, this Court understands the range of tasks needed to liquidate the receivership: transferring the annuities to an appropriate vehicle, keeping the annuitants informed of what is going on, selling real estate assets, handling ancillary litigation, and pursuing the recovery of assets were possible. On the other hand, good billing judgment also conserves the receivership, a point which this Court stressed in its Report and Recommendation on the Receiver's first fee motion. This Court finds that the Receiver's fees should be reduced by one-third. A one-third reduction accounts for the Receiver's overbilling and the Motion's other shortcomings in demonstrating reasonableness. This Court does not reduce the fee award by more given the substantial reduction of the special insurance counsel's fees. Thus, this Court recommends that the Receiver be awarded $34,357.67 in total fees.

17. Altogether, this yields a total fee award of $39,780.17 for the three month period at issue. This Court finds this to be a more than adequate compensation on the whole and much more reasonable than the total fee amount claimed. This is reasonable in light of work done by the Receiver, her attorneys, and the special insurance counsel during the relevant quarter and in relation to the prior two awards. Should she file a fourth fee motion, this Court greatly emphasizes to the Receiver the need to exercise good billing judgment and to submit a fee claim that clearly demonstrates its reasonableness.

18. Lastly this Court considers the claim for costs and expenses. The Receiver claims a total of $833.04. This Court finds this reasonable except for the $69.00 in Pacer photocopies claimed. This Court allowed $36.10 in Pacer-related fees in its prior Report and Recommendation even though the Receiver provided "no explanation for the amount of this particular cost". The Receiver still does not explain it now. This Court will not allow it this time, and this Court recommends that the Receiver be awarded only $764.04 in costs and expenses. As for the special insurance counsel, it seeks $.90 in costs, and this Court finds this reasonable.

**ACCORDINGLY**, this Court recommends to the District Court that the Receiver's Third Motion be **GRANTED, in part**, as follows:

   I.   The fee and cost/expense amounts that this Court finds
        reasonable for each party are:

        A.   $35,121.71 for the Receiver and her Lead Counsel,
             Damian & Valori, LLP, and

        B.   $5,423.40 for the Insurance Counsel, Ver Ploeg &
             Lumpkin, P.A.

   II.  The above reasonable fee and cost/expense amounts
        yield an overall total award of $40,545.11.

   III. The amount of fees and cost/expenses to be awarded now
        (and the 20% to be held back pending final ruling)
        are:

        A.   $28,097.37 to be distributed now (with $7,024.34
             to be held back) to the Receiver and her Lead
             Counsel, and

        B.   $4,338.72 to be distributed now (with $1,084.68
             to be held back) to the Insurance Counsel, Ver
             Ploeg & Lumpkin, P.A.,

   IV.  As such, this Court recommends that a total of
        $32,436.09 be awarded now on the Motion with a total
        of $8,109.02 to be held back pending final ruling.

   The parties shall have fourteen (14) days from the date of this Report and Recommendation within which to file objections, if any, with the Honorable Jose E. Martinez, the United States District Judge assigned to this case.

**DONE AND SUBMITTED** in Chambers at Fort Pierce, Florida, this 26th day of November, 2013.

_____
FRANK J. LYNCH, JR.
UNITED STATES MAGISTRATE JUDGE

cc: Hon. Jose E. Martinez
    Kenneth Dante Murena, Esq.
    Dugan Bliss, Esq.