IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 2:13-cv-14050-MARTINEZ-GOODMAN

SECURITIES AND EXCHANGE
COMMISSION,

    Plaintiff,

vs.

WE THE PEOPLE, INC. OF THE
UNITED STATES,

    Defendant.
_____/

## RECEIVER'S EIGHTH STATUS REPORT

Melanie E. Damian, the court-appointed receiver (the "Receiver") for We the People, Inc. of the United States ("WTP" or the "Receivership Defendant") in the above-captioned Securities and Exchange Commission ("SEC") enforcement action, now submits, pursuant to this Court's *Order Granting Receiver's Agreed Motion to Approve (1) The Rescission Agreement Between The Receiver And Comerica Legacy Foundation And Comerica Bank & Trust, N.A. And (2) The Plan For The Transfer of Assets To The Miami Foundation* [E.C.N. #156] (referred to herein as the "Transfer Order"), her Eighth Status Report With Accounting of Receivership Funds Transferred to The Miami Foundation, and states as follows:

### I. INTRODUCTION

On July 20, 2015, this Court entered the Transfer Order [E.C.N. #156], granting the Receiver's Motion to Approve (1) The Rescission Agreement Between The Receiver And Comerica Legacy Foundation and Comerica Bank & Trust, N.A. and (2) The Plan For The Transfer

of Assets To The Miami Foundation [E.C.N. #152]. In the Transfer Order, the Court approved the Receiver's plan for the rescission of the agreement to transfer the assets of the Receivership Estate to Comerica Legacy Foundation ("Comerica") and approved the Receiver's plan to transfer the assets of the Receivership Estate from Comerica to The Miami Foundation, as set forth in the Receiver's Motion and attached Agreements with Comerica and The Miami Foundation. *See* E.C.N. # 156 at ¶¶ 1, 2, 4.

In the Transfer Order, this Court also ordered that the Receiver should remain in place for a period of six (6) months from the date of the Court's July 20, 2015, Order with the duties of implementing the rescission of the prior transfer, transferring the assets to The Miami Foundation, and filing a full accounting of the assets transferred. *Id*. at ¶ 17. The Court further directed the Receiver to report her findings to the Court regarding The Miami Foundation's compliance with the Agreement for the transfer of the Receivership Estate Assets to The Miami Foundation (the "Miami Foundation Agreement") and to provide a final accounting concerning the transfer of any outstanding funds to The Miami Foundation within two (2) weeks after the close of the aforementioned 6-month period. *Id*. at ¶ 18.

The Receiver submits the instant Report in compliance with the Court's directives in the Transfer Order. As explained in greater detail below, the Receiver and her professionals have monitored and analyzed the work of The Miami Foundation in connection with the transfer of the Receivership assets and with the charitable gift annuity program (the "CGA Program"). In reaching her conclusions and recommendations set forth herein, the Receiver and her Restructuring Officer have met with representatives from The Miami Foundation and have reviewed financial account information in connection with the CGA Program.

For the reasons set forth below, the Receiver recommends that she remain in place for two (2) additional months with the limited responsibilities of assuring that The Miami Foundation puts in place a satisfactory plan for the management of the CGA Program and the Receivership Estate assets in the best interests of the annuitants.

## II.  BRIEF BACKGROUND

On February 4, 2013, this Court entered the Receivership Order and appointed the Receiver to, among other duties, "manage, control, operate and maintain the Receivership Estate," and "take such action as necessary and appropriate for the preservation of Receivership Property."  [*Id*. at ¶ 6.A.- 6.H.].  In undertaking her duties throughout the term of this Receivership, the Receiver has been mindful of her duties as a fiduciary to the victims and creditors of the Estate, including, most importantly, the annuitants and beneficiaries of the CGA Program.  *See Sovereign Bank v. Schwab*, 414 F.3d 450 (3d Cir. 2005) (receiver owes a fiduciary duty to victims and creditors); *Golden Pacific Bancorp. v. F.D.I.C*., 375 F.3d 196 (2d Cir. 2004) (same).

As of the July 20, 2015, Transfer Order, the Receiver's primary concern has been the monitoring of the transfer to The Miami Foundation and The Miami Foundation's management of the assets of the Estate and the CGA Program to assure that the Program is sustainable and that the best interests of the creditors and victims of the Receivership Entity are protected now and throughout the term of the Program.  Beyond monitoring the transfer to The Miami Foundation, the Receiver has continued the work of winding down the few remaining clawback actions against former marketing advisors for the Receivership Entity, We The People, Inc. of the United States ("WTP").

A full description of the history of the Receivership and all of the Receiver's efforts and accomplishments in connection with identifying and marshaling assets of the Estate and otherwise

fulfilling her duties under the Receivership Order are detailed in the Receiver's seven previous Status Reports (collectively, the "Reports") [ECF ## 19, 45, 76, 94, 103, 113, and 127]. Moreover, the Receiver's Accounting of Assets Transferred from Comerica Legacy Foundation to The Miami Foundation and To The Receivership Estate [ECF #160] (herein "Accounting of Assets Transferred") sets forth a detailed accounting of those assets transferred from Comerica and the Receivership Estate to The Miami Foundation as of the Closing of the Transfer in mid-August 2015.

### III. THE RECEIVER'S REVIEW OF THE MIAMI FOUNDATION'S COMPLIANCE WITH ITS DUTIES AND RESPONSIBILITIES UNDER THE TRANSFER AGREEMENT.

As indicated above, at this time, the Receiver's continuing work on behalf of the Receivership Estate involves the winding down and resolution of the final actions against WTP's former marketing advisors, the handling of a few ministerial matters, and administrative work to assure that the transfer of the CGAs to The Miami Foundation is carried out according to the terms of the Transfer Agreement and in the best interests of the annuitants and investors whose contracts have been transferred.

The Receiver and her Restructuring Officer have conducted periodic checks of The Miami Foundation's banking activity in connection with the CGA Program and have met with The Miami Foundation's representatives intermittently to address any questions or concerns. In anticipation of her planned discharge, the Receiver and her Restructuring Officer met with The Miami Foundation in early January to discuss what has been done to manage the assets and what plan is in place for the maintenance of the CGA Program for the long term. The Receiver learned that The Miami Foundation Investment Committee has not yet had time to implement a plan to manage the assets. As such, the Receiver and her Restructuring Officer offered to provide several plan

options for the management of the Program and to discuss the plans with the Investment Committee in early March.  It is for this reason that the Receiver recommends that she remain in place for an additional two (2) months so that she can assure that The Miami Foundation Investment Committee is implementing an acceptable plan for the long-term benefit of the Program and the annuitants.

As a result of the Receiver's analysis and intermittent checks and ongoing discussions with The Miami Foundation, The Foundation agreed to a modification of the Transfer Agreement to reflect that The Miami Foundation will in good faith be responsible financially to sustain the Program in the long term.  The agreed Amended Transfer Agreement will be submitted to the Court for approval with the Receiver's Motion for Discharge.

**IV.  ACCOUNTING OF THE ASSETS TRANSFERED TO THE MIAMI FOUNDATION TO DATE AND THE ASSETS REMAINING TO BE TRANSFERRED.**

As set forth in the Receiver's Accounting of Assets Transferred, Comerica transferred the following assets to the Miami Foundation in August 2015:

a) 503 Comerica Annuities with an accumulated value of $48,005,362.47;

b) $1,595,450.86 in cash; and

c) Miscellaneous assets, including computers and office equipment used at the former WTP offices.

In addition, Comerica transferred the Title to one piece of real property located at 3320 Harris Road, in Knoxville, Tennessee, to the Receiver.  The Receiver is working to market and sell the property, and, upon doing so, the Receiver will turn over the proceeds of the sale to the Miami Foundation.

In addition to the above assets which were transferred by Comerica to The Miami Foundation and the Receiver pursuant to the Rescission Agreement with Comerica, the following funds remain in accounts controlled by the Receiver:

a) $748,483.83 in a Wells Fargo Business Checking Account;

b) $193,771.48 in a Gibraltar Private Bank Operating Account; and

c) $675.36 in a Gibraltar Private Bank Operating Account.

These amounts are explained more fully below.

### *(a) Cash Held In The Wells Fargo Business Checking Account*

The Receivership maintained a business checking account at Wells Fargo Bank.  The account was opened and maintained for the operating expenses of the Receivership Estate and was primarily used to make payments to annuitants and to pay the costs associated with operation of the ongoing business of the Estate since the inception of the Receivership.  In October 2014, the Receiver transferred $4.2 million from the Wells Fargo account to Comerica, and in November 2014, the Receiver transferred an additional $1.2 million to Comerica.  As a result, the Wells Fargo account was left with a balance of $404,654.50, which the Receiver intended to transfer, less fees and expenses, at the termination of the Receivership.  However, Comerica rescinded its Agreement with the Receiver prior to the termination of the Receivership.  As a result, the final transfer was never made from the Receivership to Comerica, and Comerica transferred those funds previously received from the Receivership Estate to The Miami Foundation.

At the time of the Transfer to The Miami Foundation, the Receiver agreed with The Miami Foundation representatives that the funds in the Wells Fargo account would be transferred to The Miami Foundation at the time of the Receiver's discharge.  The Receiver has kept The Miami

Foundation informed of the balance in the account and intends to transfer those funds, including all interest earned in the account, to The Miami Foundation upon her final discharge.

### (b) The Gibraltar Private Bank Operating Account (1)

The Gibraltar Bank Operating Account was opened and used for the payment of fees and costs of the Receiver and her professionals, including legal fees and costs. The Receiver maintains in this account the funds necessary to pay the holdbacks from the approved fees to all counsel at the close of the Receivership. After all of the Receiver's professionals have been paid outstanding fees and costs, the Receiver will transfer the balance of the account to The Miami Foundation, including all interest earned in the account.

### (c) The Gibraltar Private Bank Operating Account (2)

The Receiver opened and used a second Gibraltar Bank Operating Account solely for the purpose of receiving funds derived from litigation by the Receiver against third parties. Therefore, all settlement proceeds from litigation against former directors and officers, former counsel, and former marketing advisors have been deposited into this account. Those funds are then periodically transferred into the above-described Gibraltar Operating Account (1). As discussed below, there is one action against a former marketing advisor that remains pending and that will, hopefully, result in additional funds to the Estate, and there is at least one former marketing advisor who continues to make scheduled settlement payments to the Receiver into this account.

In light of the minimal amount of ongoing activity in this account, the Receiver intends to close the account and transfer all of the funds into the above Gibraltar Operating Account for transfer to The Miami Foundation at the close of the Receivership.

## V. REMAINING DUTIES AND RESPONSIBILITIES OF THE RECEIVER

As indicated above, at this time, the Receiver's only remaining work on behalf of the Receivership Estate involves the winding down and resolution of the final actions against WTP's former marketing advisors and working to assure that the transfer of the CGAs to Comerica is carried out according to the terms of the Transfer Agreement and in the best interests of the annuitants.

### A. *Clawback Litigation*

Insofar as the clawback claims against former marketing are concerned, litigation remains pending in one such case in which default final judgment in the amount of $409,371.24 was entered in June 2015 (Case No. 15-CV-20830 [ECF# 11]). A deposition in aid of execution is scheduled for February 16, 2016 in that case. In addition, the Receiver continues to receive payments pursuant to a settlement agreement with one other former advisor. With the exception of these two cases, the Receiver's work on clawback claims has wrapped up. As set forth above and in previous reports filed with this Court, the Receiver continues to transfer all proceeds from these cases to The Miami Foundation, after the deduction of applicable fees and costs.

### B. *Miscellaneous Duties*

The Receiver has also been assisting The Miami Foundation with the handling of litigation by a former annuitant in Illinois. The Receiver also maintains tax records to assure that the Receivership's reporting responsibilities are met through the date of discharge.

### C. *The Annuities*

Other than the above litigation, the Receiver is working with The Miami Foundation to assure that a satisfactory investment plan is in place for the Program. As of the end of January 2016, The Miami Foundation maintains 941 commercial annuities as part of the CGA Program.

The accumulated value of the annuities held by The Miami Foundation is approximately $47,422,622.83, and the cash surrender value is approximately $39,229,088.60. As of that same period, the present value of the required payments to annuitants pursuant to the CGA contracts was approximately $41,816,159. Based on these values, the Receiver is confident that the Program is sustainable if properly managed.

The Receiver posits that by leaving the Receiver in place for an additional two-month period, albeit with very limited duties and powers, the Receiver and her counsel will have sufficient time to work with The Miami Foundation to assist them with putting a satisfactory investment plan in place for the CGA Program and to complete the transfers to The Miami Foundation of all remaining funds from the Receivership Estate..

Two weeks after the close of the two-month period, the Receiver will report her findings concerning The Miami Foundation's compliance with the Transfer Order and will provide a final accounting concerning the transfer of any outstanding funds to The Miami Foundation.

## VI.  CERTIFICATION

Undersigned counsel hereby certifies that she has conferred with counsel for the SEC regarding her recommendations herein and such counsel consents to those recommendations.

## VII.  CONCLUSION

WHEREFORE, for the reasons set forth above, the Receiver respectfully recommends that this Court enter an order requiring the Receiver to remain in place for two months with the limited responsibilities of assisting The Miami Foundation with the implementation of an investment plan that is satisfactory to the Receiver and reporting her findings to the Court within two weeks after the end of the two months; of completing all administrative and tax-related duties relating to the

transfer of the Program to The Miami Foundation; and of transferring all remaining funds; and granting such other relief as this Court deems just and appropriate.

Dated: February 5, 2016.

>Respectfully submitted,
>
>**DAMIAN & VALORI, LLP**
>*Counsel for Receiver*
>1000 Brickell Avenue, Suite 1020
>Miami, Florida 33131
>Telephone: (305) 371-3960
>Facsimile:   (305) 371-3965
>*mvisconti@dvllp.com*
>
>*/s/ Melissa Damian Visconti*
>MELISSA DAMIAN VISCONTI
>FLORIDA BAR NO. 0068063

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Receiver's Eighth Status Report With Accounting of Receivership Assets Transferred to Comerica and Motion for Partial Discharge was served via CM/ECF this 5th day of February, 2016, upon all counsels of record.

>*/s/ Melissa Damian Visconti*
>MELISSA DAMIAN VISCONTI